# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38157-2010

| | | |
|---|---|---|
| The ESTATE of BENJAMIN HOLLAND deceased; GREGORY HOLLAND; and KATHLEEN HOLLAND, | ) ) ) ) | Coeur d'Alene, May 2012 Term |
| | ) | 2012 Opinion No. 78 |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Filed: May 29, 2012 |
| | ) | Stephen W. Kenyon, Clerk |
| METROPOLITAN PROPERTY and CASUALTY INSURANCE COMPANY, and METLIFE AUTO & HOME, | ) ) ) ) | |
| Defendants-Respondents. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>vacated</u>.

Kinzo H. Mihara, Coeur d'Alene, argued for appellants.

William J. Schroeder, Paine Hamblen, LLP, argued for respondents.

_____

EISMANN, Justice.

This is an appeal from the denial of attorney fees under Idaho Code section 41-1839 on the ground that the insured's proof of loss was insufficient under the statute because it did not provide the insurer with the legal theory upon which coverage was later determined to exist. We vacate the judgment because a proof of loss need not include an analysis of the proper theory of coverage under the insurance policy.

## I.

### Factual Background.

On October 25, 2009, Benjamin Holland was killed in a single vehicle accident caused by the negligence of the driver of the car in which Mr. Holland was a passenger. At the time of the

accident, he had a policy of automobile insurance issued by MetLife Auto and Home which provided underinsured motorist coverage.

By a letter dated November 8, 2009, to Ben's parents, Gregory and Kathleen Holland, attorney Kinzo H. Mihara agreed to represent them on a pro bono basis, "to act on behalf [sic] yourselves and that of the estate of your son, Benjamin Holland, for the purposes of administering his estate and pursuing any claims that you, individually and/or collectively may have."

On or about November 8, 2009, Mr. Mihara telephoned a MetLife adjuster to submit a proof of claim under Ben's insurance policy. The policy did not require a written proof of loss. It states: "You or someone on your behalf must notify us as soon as possible of any accident or loss. The notification should include as many details as possible, including names and addresses of drivers, injured persons and witnesses, and the time, place; and circumstances of the accident or loss." It also provided that MetLife "may require it in writing." MetLife requested information, but did not later request a written proof of loss.

By letter dated November 10, 2009, MetLife requested specific information, most of which were specified documents. Mr. Mihara faxed those items to MetLife on November 17, 2009. On December 1, 2009, he faxed MetLife a copy of the letter from the driver's insurance company stating that it would pay the policy limits of $50,000.

On December 7, 2009, the MetLife adjuster telephoned Mr. Mihara and told him that MetLife would pay the policy limits on Ben's policy. Mr. Mihara responded by stating that the matter was not concluded because he had decided to make claims on two MetLife policies in which Ben's parents were the named insureds. The policies were an automobile policy and a motorcycle policy. The adjuster stated that she was leaving on a three-week vacation and would not be able to review the two new claims until she returned on January 6, 2010. She asked if that delay would be acceptable, and Mr. Mihara said that it would be.

On January 8, 2010, MetLife retained outside counsel to provide an opinion regarding coverage under the Hollands' two insurance policies. The attorney contacted Mr. Mihara by telephone to discuss the alleged theories of recovery and to request additional time to investigate them. By letter faxed on January 14, 2010, Mr. Mihara notified the adjuster and the attorney that the Hollands were demanding the policy limits on all three policies (Ben's automobile policy and the Hollands' automobile and motorcycle policies) and that he would give MetLife until January

22, 2010, to make a decision. On January 27, 2010, the adjuster asked Mr. Mihara for written documentation as to whose name was on the title of the motorcycle. He faxed the adjuster a copy of the title that day, and the next day he received a faxed reply asking for a legible copy of the title.

After MetLife had offered the policy limits on Ben's insurance policy, Mr. Mihara entered into an undated contingent fee agreement with the Hollands that he contends applies to all sums paid by MetLife, including under Ben's policy. That agreement provided for "a contingent rate of: Thirty percent (30%) of all monies recovered from MetLife prior to trial, thirty-five percent (35%) of all monies received from MetLife after a trial, and/or forty percent (40%) of monies received from MetLife after any appeals."

On January 26, 2010, Mr. Mihara filed this action on behalf of Gregory and Kathleen Holland and Ben's estate (herein both called "the Hollands") and against Metropolitan Property and Casualty Insurance Company and MetLife Auto & Home (herein both called "MetLife"). The complaint alleged causes of action for breach of the three insurance contracts, two causes of action for negligent infliction of emotional distress, two causes of action for intentional infliction of emotional distress, and three causes of action for the tort of bad faith.

On February 2, 2010, MetLife's outside counsel emailed an offer of settlement to Mr. Mihara. It stated as follows: "This letter confirms Met is offering your client the limits of the motorcycle policy minus the offset. It is my understanding, the Motorcycle policy is $250,000.00 and you received $50,000.00 from the tortfeasor. Therefore, Mets offer is $200,000.00. Obviously, we will require a full release." The following day, Mr. Mihara responded with an email accepting the offer. His email stated: "Please let this letter confirm that my clients accept MetLife's offer of $200,000. My clients will sign a full release of their claims against Metlife." The email also asked outside counsel, at her earliest convenience, to send certified funds, payable to the Hollands, to Mr. Mihara's office. MetLife's outside counsel later stated that when she sent the settlement offer, she was unaware that Mr. Mihara had already filed this lawsuit.

On February 9, 2010, Mr. Mihara filed on behalf of the Hollands a motion "pursuant to I.C. § 41-1839 for an evidentiary hearing to determine a reasonable attorney's fee and for this Court's Order requiring their insurer to pay such reasonable attorney's fee." The statute provides that an insurer, who fails to pay the amount justly due under the policy for a period of thirty days

3

after the proof of loss has been furnished, shall pay reasonable attorney's fees in any action later brought for recovery under the terms of the policy. The motion was accompanied by Mr. Mihara's affidavit in which he stated that he "will not charge his clients any fees as a result of recoveries outside this litigation," which excludes the $50,000 recovered from the driver of the vehicle.

On February 12, 2010, MetLife's outside counsel sent two settlement drafts to Mr. Mihara totaling $200,000 and a release. The terms of the proposed release were later negotiated, and on February 24, 2010, the Hollands signed a release which excluded from its terms "Plaintiffs' Motion for Attorney Fees." On March 2, 2010, the parties filed a document entitled "Joint Motion and Stipulated Order to Dismiss All Clams Except for the Pending Motion for Attorney Fees." The following day, the district court signed and entered the order attached to the document, which stated "that all claims in the above-captioned mater [sic], except for Plaintiffs' Motion for Attorney fees filed on February 9, 2010, are dismissed with prejudice and without cost to either party."

The last paragraph in the complaint, located just prior to the prayer for relief, stated as follows, "The Estate of Benjamin Holland, Gregory Holland, and Kathleen Holland are entitled to reasonable attorney's fees pursuant to I.C. § 12-120, § 12-121, § 41-1839, and any other applicable statutory authority and/or judicial doctrine which allows for recovery of attorney's fees." On April 12, 2010, MetLife filed an answer denying that the Hollands were entitled to an award of attorney fees pursuant to Idaho Code section 41-1839 and alleging affirmative defenses to such a claim. The answer stated that it did not address the other paragraphs in the complaint because all of Hollands' claims, except for their motion for attorney fees, had already been dismissed.

On April 28, 2010, MetLife filed a motion to enforce the settlement agreement. The supporting memorandum alleged that the email sent to Mr. Mihara on February 2, 2010, offering to settle for $200,000 in exchange for a "full release," and Mr. Mihara's responding email accepting the offer of $200,000 and stating that his clients would sign a "full release of their claims against MetLife" constituted an agreement to release all claims, including any claim that the Hollands were entitled to an award of attorney fees under Idaho Code section 41-1839.

On May 17, 2010, Mr. Mihara, on behalf of Hollands, filed a motion for summary judgment "as to the entitlement of attorney's fees and the amount thereof ($60,000), or at least

4

partial summary judgment on the issue of entitlement of attorney's fees." The basis of the motion was that MetLife's answer failed to deny certain factual allegations in the complaint, that those allegations are therefore deemed admitted as true, and that as a result MetLife had no factual basis upon which to deny Hollands' entitlement to an award of attorney fees. Mr. Mihara also filed his affidavit in support of the motion for summary judgment, and MetLife's counsel filed his affidavit in opposition. Both sides also filed memoranda.

The district court heard the motions, and on July 20, 2010, it issued its memorandum opinion. With respect to Hollands' motion for attorney fees, the court denied the motion on the ground that there were issues of fact that needed to be resolved in order to determine whether the Hollands were the prevailing party. The court also stated that they

> face a daunting task trying to prove Hollands prevailed within the meaning of I.C. § 41-1839 and *Parsons* [*v. Mutual of Unumclaw Ins. Co.*, 143 Idaho 743, 152 P.3d 614 (2007)] where: 1) there was no initial refusal by Metlife to pay, and 2) where Metlife was not served with a Summons and Complaint in this matter at the time their offer was tendered, and arguably had no knowledge at all of Hollands' lawsuit at the time their offer was tendered.

The court held, "Because there is a dispute of fact as to knowledge, and the facts surrounding the reasonableness of the initial refusal to pay the claim, determination of prevailing party cannot be decided at this time."

The district court then addressed whether Mr. Mihara had granted MetLife an extension of time beyond the thirty-day period provided by Idaho Code section 41-1839. The court stated that on December 7, 2009, MetLife had offered to pay the policy limits on Ben's insurance policy, but Mr. Mihara did not accept that tender because he wanted to make claims on the other two policies. The court also noted that MetLife contended that the thirty-day period on the other two policies did not begin until January 6, 2010, and that the parties reached a settlement within thirty days of that date. The court also stated that there was an issue of whether MetLife unreasonably refused to pay Hollands' claim, if, as MetLife contended, it was MetLife's outside counsel rather than Mr. Mihara who developed the coverage theory upon which the increased amount of the settlement was based.

With respect to MetLife's motion to enforce the settlement agreement, it held that there was a genuine issue of material fact as to whether a "full release" included any right to recover attorney fees. However, the court granted the motion on the ground that the Hollands had failed

to submit a sufficient proof of loss on two grounds. First, the Hollands failed to provide MetLife with the legal theories upon which the settlement was ultimately based. Second, the Hollands failed to give MetLife a reasonable opportunity to investigate and determine its liability, given the January 22, 2010, deadline that the Hollands refused to extend. The court therefore ruled that the Hollands were not entitled to an award of attorney fees.

The Hollands filed a motion for reconsideration. After a hearing, the district court denied that motion. On October 6, 2010, the court entered a document entitled "Judgment of Dismissal with Prejudice." The Hollands then appealed.

## II.

### Jurisdiction

"[S]ubject matter jurisdiction is an issue that this Court may raise *sua sponte* at any time." *Johnson v. Blaine County*, 146 Idaho 916, 924, 204 P.3d 1127, 1135 (2009). This Court will, sua sponte, dismiss for lack of jurisdiction an appeal that is taken from a non-appealable order. *Highlands Dev. Corp. v. City of Boise*, 145 Idaho 958, 960, 188 P.3d 900, 902 (2008). "Although the document was entitled 'Judgment,' that is not controlling. 'Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title.' " *Harrison v. Certain Underwriters at Lloyd's, London*, 149 Idaho 201, 205, 233 P.3d 132, 136 (2010) (quoting *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 867, 55 P.3d 304, 321 (2002)).

Idaho Appellate Rule 11(a) sets forth the appealable judgments and orders in civil cases. Under that rule, "[f]inal judgments, as defined in Rule 54(a) of the Idaho Rules of Civil Procedure" and "[a]ny order made after final judgment" are appealable. I.A.R. 11(a)(1) & (7). Rule 54(a) of the Idaho Rules of Civil Procedure defines what constitutes a final judgment as follows:

> "Judgment" as used in these rules means a separate document entitled "Judgment" or "Decree". A judgment shall state the relief to which a party is entitled on one or more claims for relief in the action. Such relief can include dismissal with or without prejudice. A judgment shall not contain a recital of pleadings, the report of a master, the record of prior proceedings, the court's legal reasoning, findings of fact, or conclusions of law. A judgment is final if either it has been certified as final pursuant to subsection (b)(1) of this rule or judgment has been entered on all claims for relief, except costs and fees, asserted by or against all parties in the action.

6

The document entitled "Judgment of Dismissal with Prejudice" entered by the district court on October 6, 2010, did not comply with Rule 54(a). Under that rule, "A judgment shall not contain a recital of pleadings . . . [or] the record of prior proceedings . . . ." The document included a recital of the pleadings ("This action was started on January 26, 2010, with Plaintiffs' filing of a Civil Complaint") and a record of prior proceedings, which consisted of a list of the various motions presented to the district court, the dates of the hearings on those motions, and the court's rulings on the motions. Thus, there was no final judgment and therefore no order entered after final judgment.

After being notified of the lack of a final judgment, the district court entered a document entitled, "Amended Judgment of Dismissal with Prejudice." It likewise did not comply with Rule 54(a). It still included a record of prior proceedings, reciting the court's rulings in its "Memorandum Decision and Order" and the date such order was entered; the entry of its " 'Memorandum Decision and Order Denying Plaintiffs' Motion for Reconsideration' filed October 6, 2010,"; the entry of its " 'Judgment of Dismissal With Prejudice' filed October 6, 2010"; and this Court's order conditionally dismissing the appeal. The document also included an order dismissing Hollands' motion for reconsideration, so it was not a separate document that consisted only of the judgment. Therefore, this document likewise did not constitute a final judgment.

On April 30, 2012, the district court entered a second amended judgment, which complies with Rule 54(a). It simply states, "IT IS HEREBY ORDERED that the complaint is dismissed with prejudice, each party to bear their own costs." Because there was no counterclaim, cross-claim, or third party claim, the only pleading alleging a cause of action was the complaint. Therefore, the judgment need only adjudicate the causes of action set forth in the complaint. It did so by simply stating that the complaint was dismissed with prejudice. The second amended judgment correctly did not include a recitation of any of the prior proceedings. Because there is now a final judgment, we have jurisdiction to resolve the issues raised on appeal.

## III.

### Did the District Court Err in Granting MetLife's Motion to Enforce the Settlement Agreement?

7

After this lawsuit was filed, the parties reached a settlement. On February 2, 2010, MetLife's outside counsel emailed an offer of settlement to Mr. Mihara, which offered to settle the dispute for $200,000 and stated that MetLife "will require a full release." The following day, Mr. Mihara responded by an email accepting the offer on behalf of Hollands. In his email, Mr. Mihara stated, "My clients will sign a full release of their claims against MetLife."

A settlement agreement "supersedes and extinguishes all pre-existing claims the parties intended to settle." *Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 670, 249 P.3d 857, 863 (2011). "A party to a lawsuit in which a settlement agreement is subsequently reached need not initiate a new civil lawsuit to enforce the settlement agreement." *Id.* Although the better practice is to amend the pleadings to a cause of action based upon the settlement agreement, a party seeking to enforce the agreement can also do so by motion in the existing lawsuit before it is dismissed. *Id.* "A motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary hearing has been conducted." *Id.* at 671, 249 P.3d at 864.

The parties disagree as to whether a full release of the Hollands' claims against MetLife included attorney fees, and the district court held that there was an issue of fact that precluded summary judgment on that issue. In this case, neither party requested a jury trial, and the motion to enforce the settlement would be in the nature of a declaratory judgment asking the court to determine the terms of the settlement agreement. There is no right to a jury trial for such a declaratory judgment action. *Temperance Ins. Exchange v. Carver*, 83 Idaho 487, 493, 365 P.2d 824, 827 (1961). Therefore, the district court can conduct a court trial to resolve the issues of fact regarding the settlement agreement.

The court granted the motion to enforce the settlement agreement on the ground that the proof of loss submitted by the Hollands was insufficient because it did not set forth the legal theory upon which MetLife would be liable. As will be explained below, the court erred in holding that a proof of loss must include an explanation as to why there is coverage under the policy. Therefore, the district court erred in granting the motion to enforce the settlement agreement on that ground.

## IV.

**Did the District Court Err in Denying Hollands' Motion for Summary Judgment?**

Hollands filed a motion for summary judgment "as to the entitlement of attorney's fees and the amount thereof ($60,000), or at least partial summary judgment on the issue of entitlement of attorney's fees." The motion was based upon the imaginative theory that because MetLife had failed to deny in its answer the allegations supporting the causes of action that had been dismissed with prejudice over two months earlier, it admitted the allegations of fact upon which those dismissed causes of action were based.

"A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in that party's favor upon all or any part thereof." I.R.C.P. 56(a). The "claim, counterclaim, or cross-claim" mentioned in the rule is a "claim for relief" in Rule 8(a)(1) of the Idaho Rules of Civil Procedure. An assertion that a party is entitled to attorney fees under Idaho Code section 41-1839 is not a claim for relief. There is not a cause of action for such attorney fees. *Barbee v. WMA Securities, Inc.*, 143 Idaho 391, 395, 146 P.3d 657, 661 (2006). Attorney fees are simply costs awarded incident to prevailing on a cause of action. Therefore, Rule 56 had no application, and it was error for the district court to apply Rule 56 to Hollands' request for attorney fees. Although the district court denied the motion on the ground that there were genuine issues of material fact, it should have done so on the ground that summary judgment was inapplicable.

## V.

### Did the District Court Err in Failing to Award Hollands
### Attorney Fees Under Idaho Code Section 41-1839?

If the district court finds that the settlement agreement did not include attorney fees, then it must determine whether the Hollands are entitled to an award of attorney fees under Idaho Code section 41-1839. The court made several rulings relevant to that issue which will be addressed below.

**Prevailing party.** In addressing whether the Hollands were entitled to an award of attorney fees under Idaho Code section 41-1839, the district court first addressed whether they prevailed in this litigation. The district court held that there were factual disputes that needed to be resolved in order to determine whether the Hollands prevailed. According to the court, "Because there is a dispute of fact as to knowledge [of the Hollands' lawsuit], and the facts

9

surrounding the reasonableness of the initial refusal to pay the claim, determination of prevailing party cannot be decided at this time." Neither of those issues is relevant to determining the prevailing party under section 41-1839.

The court felt that knowledge of the lawsuit was important because "unlike the *Parsons* [*v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 152 P.3d 614 (2007)] case, the facts in this case do not indicate Metlife was served with a Complaint and Summons or otherwise knew of the Hollands' lawsuit at the time the offer was tendered." There is nothing in *Parsons* indicating that knowledge of the lawsuit has any relevance to the award of attorney fees under section 41-1839. We noted in *Parsons* that there was no requirement that the insurer had acted unreasonably or unjustly in order to be required to pay attorney fees under the statute, nor is there any requirement that the insured was compelled to bring a lawsuit. *Id*. at 746, 152 P.3d at 617. In fact, in *Parsons* we stated that "any argument regarding the requirements for obtaining an award of attorney fees under Idaho Code § 41–1839(1) must be based upon the wording of the statute. . . . Arguments for additional requirements not contained in the statutory language must be made to the legislature, not this Court." *Id.* at 747, 152 P.3d at 618. The district court did not point to any wording of the statute that would make knowledge of the lawsuit a relevant factor in determining entitlement to attorney fees. The statute likewise does not require that the insurance company formally deny the claim. *Boel v. Stewart Title Guar. Co.*, 137 Idaho 9, 16, 43 P.3d 768, 775 (2002). All that is required is that the insurance company fail to pay the amount justly due, either to the person entitled thereto or into court, within the thirty-day period set forth in the statute.[1]

Rule 54(d)(1)(B) does not apply to determining the prevailing party under Idaho Code section 41-1839. That rule states, "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." However, the

---

[1] Idaho Code section 41-1839(1) provides:

> Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state or in any arbitration for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.

provisions of Rule 54 relating to attorney fees are applicable only to the extent that they would not be inconsistent with the statute pursuant to which the award is made. I.R.C.P. 54(e)(8). Under Idaho Code section 41-1839, the court is not to compare the relief sought by the insured with the result obtained. To be entitled to an award of attorney fees, "the insured need not obtain a verdict for the full amount requested. The insured need only be awarded an amount greater than that tendered by the insurer." *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 711, 979 P.2d 107, 113 (1999).[2]

Hollands filed this lawsuit on January 26, 2010. Prior to doing so, they had submitted proofs of loss on all three insurance policies, and MetLife had offered to pay $50,000 on one of the policies. However, MetLife had not paid any money to the Hollands, nor had it tendered payment and paid the sum into court. Therefore, the Hollands were clearly the prevailing parties in this case, assuming that the agreement to release all claims did not include attorney fees.

**Memorandum of costs.** "Attorney fees, when allowable by statute or contract, shall be deemed as costs in an action and processed in the same manner as costs and included in the memorandum of costs . . . ." I.R.C.P. 54(e)(5). A memorandum of costs must itemize each claimed expense and it "must state that to the best of the party's knowledge and belief the items are correct and that the costs claimed are in compliance with this rule." I.R.C.P. 54(d)(5). In addition, "the claim for attorney fees as costs shall be supported by an affidavit of the attorney stating the basis and method of computation of the attorney fees claimed." I.R.C.P. 54(e)(5).

Mr. Mihara chose not to file any document purporting to be a memorandum of costs. Instead, he filed a motion for attorney fees asking the court "for an evidentiary hearing to determine a reasonable attorney's fee and for this Court's Order requiring their insurer to pay such reasonable attorney's fee." That motion does not constitute a memorandum of costs. It does not itemize each claimed expense.

He accompanied the motion with his affidavit, and so the district court must determine whether that affidavit satisfies the requirements of a memorandum of costs. "Such memorandum must state that to the best of the party's knowledge and belief the items are correct and that the costs claimed are in compliance with this rule," I.R.C.P. 54(d)(5), and "[t]he the claim for attorney fees as costs shall be supported by an affidavit of the attorney stating the basis and

---

[2] If the insurer tenders an amount to the insured, it must also deposit such amount in the court. I.C. § 41-1839(2).

11

method of computation of the attorney fees claimed," I.R.C.P. 54(e)(5). The affidavit states the basis of computation by setting forth the terms of the contingent fee agreement, but it does not include the required statement that "to the best of the party's knowledge and belief the items are correct and that the costs claimed are in compliance with this rule." The court must determine whether the affidavit substantially complies with Rule 54(d)(5).

Because attorney fees are deemed as costs and must be included in the memorandum of costs, I.R.C.P. 54(e)(5), the failure to timely file a memorandum of costs will constitute a waiver of the right to recover attorney fees, I.R.C.P. 54(d)(5). A memorandum of costs must be filed no later than fourteen days after entry of judgment. *Id.* However, Rule 6(b) permits the enlargement of the time for filing a memorandum of costs. *Wheeler v. McIntyre*, 100 Idaho 286, 289, 596 P.2d 798, 801 (1979). The time for filing a memorandum of costs in this case expired on May 14, 2012, fourteen days after the entry of the final judgment April 30, 2012. Because the clerk's record on appeal was created before the final judgment was entered, we do not know whether the Hollands filed a memorandum of costs timely. If they did not, they may file a motion to enlarge the time. When the motion to enlarge the time is made after the expiration of the time for filing a memorandum of costs, the trial court can extend the time "where the failure to act was the result of excusable neglect." I.R.C.P. 6(b). If the district court determines that Mr. Mihara's affidavit does not constitute a memorandum of costs or if the Hollands failed to file a memorandum of costs within fourteen days after the final judgment was entered, and if Hollands' move to enlarge the time for filing a memorandum of costs, then the court must decide whether Hollands' failure to comply with Rule 54(d)(5) constituted excusable neglect.[3]

If the district court determines that Mr. Mihara's affidavit constituted a memorandum of costs, then MetLife was required to file a motion to disallow the costs within fourteen days. I.R.C.P. 54(d)(6). In their reply brief in support of their motion for attorney fees, the Hollands raised the issue that MetLife was required to object to any claimed costs within fourteen days or any objection was waived. The district court ignored that argument in deciding the motion for attorney fees, and the Hollands raised it again in their motion for reconsideration. The district court rejected the argument, holding that Rule 54(d)(5) does not apply to requests for attorney

---

[3] The second amended judgment stated that it was *nunc pro tunc* to October 6, 2010. The time for filing the memorandum of costs expires fourteen days after the judgment was actually entered. The court cannot retroactively change the date upon which the memorandum of costs must be filed.

12

fees made before entry of a final judgment. The court stated, "*Nowhere* in *Crowley* [*v. Lafayette Life Ins. Co.*, 106 Idaho 818, 683 P.2d 854 (1984)] is it expressed by the Idaho Supreme Court that I.R.C.P. 54(d)(5) *applies pre-judgment* as well as post-judgment" and, "There is nothing in I.R.C.P. 54 or 55 that deals with attorney fees prior to judgment." The district court apparently misread both *Crowley* and Rule 54(d)(5).

In *Crowley*, the losing party contended that the prevailing party's memorandum of costs should be stricken because it was filed before the judgment was entered. This Court rejected that argument, holding that "the premature filing of the memorandum of costs in this case does not constitute a ground for striking the memorandum of costs." 106 Idaho at 823, 683 P.2d at 859. In so holding, this Court stated that "we can conceive of no prejudice to any party which would result from considering a memorandum of costs filed prior to a decision of the court to become valid upon the date the clerk of the court files the decision." *Id*. In a footnote, we also stated, "We note that this holding does not in any way affect the requirement of I.R.C.P. 54 (d)(6) that any objections to costs must be filed within 10 days of the service of the memorandum of costs." *Id*. at n.4.[4] After the *Crowley* decision, Rule 54(d)(5) was amended to add, "A memorandum of costs prematurely filed shall be considered as timely." Thus, had the court read the current rule, it would have known that it applies to memoranda of costs filed before judgment too.

Rule 54(d)(6) provides, "Any party may object to the claimed costs of another party set forth in a memorandum of costs by filing and serving on adverse parties a motion to disallow part or all of such costs within fourteen (14) days of service of the memorandum of cost." The requirement of filing a motion to disallow costs depends upon there being a memorandum of costs filed by the opposing party. If Mr. Mihara's affidavit did not constitute a memorandum of costs, then there was no requirement that MetLife file a timely motion to disallow the costs. If the district court determines that the affidavit did constitute a memorandum of costs and MetLife seeks to enlarge the time within which to object, the court can consider whether the Hollands' failure to designate it as a memorandum of costs or other facts constitute excusable neglect for MetLife failing to timely file the motion to disallow.

**Attorney fees under Idaho Code section 41-1839.** "Idaho Code § 41–1839(1) contains two requirements for an insured to be entitled to an award of attorney fees: (1) the insured must

---

[4] After the decision in *Crowley*, the time for filing an objection to costs was increased from ten days to fourteen days.

13

provide a proof of loss as required by the insurance policy; and (2) the insurer must fail to pay the amount justly due within thirty days after receipt of the proof of loss." *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 746-47, 152 P.3d 614, 617-18 (2007). Because attorney fees awardable under section 41-1839 are costs, the court can conduct an evidentiary hearing to resolve any disputed issues of fact regarding the award of attorney fees under that statute. I.R.C.P. 54(e)(6).

        **a. Furnishing proof of loss**. The statute requires that the insured must furnish a proof of loss as provided in the insurance policy. "As defined by this Court, a submitted proof of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 593, 130 P.3d 1127, 1131 (2006). "It must also mention a specific sum so that a tender can be made, or provide the basis for calculating the amount of the claimed loss." *Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, 328, 233 P.3d 1221, 1250 (2010) (citations omitted). "The documentation is the 'proof.' The explanation of physical and/or financial injury is the 'loss.' " *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 350, 766 P.2d 1227, 1231(1988).

With respect to providing a proof of loss, the insurance policies at issue in this case state:

> You or someone on your behalf must notify us as soon as possible of any accident or loss. The notification should include as many details as possible, including names and addresses of drivers, injured persons and witnesses, and the time, place, and circumstances of the accident or loss. We may require it in writing.

On November 8, 2009, Mr. Mihara telephoned MetLife and stated that he wanted to make a claim on Ben's policy. By letter dated November 10, 2009, MetLife asked for various items of information. On November 17, 2009, Mr. Mihara faxed copies of most of the requested information to MetLife. On December 1, 2009, he faxed to MetLife a copy of the last item requested, which was a letter from the driver's insurance company stating that it would pay the policy limits of $50,000. Thus, the proof of loss was provided on December 1, 2009, with respect to this insurance policy.

On December 7, 2009, Mr. Mihara told MetLife that he was also making claims under the two insurance policies of Mr. and Mrs. Holland. MetLife did not ask for any additional

14

information regarding those policies until January 27, 2010, when it faxed to Mr. Mihara a request for written documentation as to the person(s) named on the title to the motorcycle. That was also the date upon which MetLife's outside counsel had completed her coverage opinion and had emailed it to the adjuster. Whether the information submitted by the Hollands prior to December 7, 2009, constituted a sufficient proof of loss is a question of fact. *Greenough*, 142 Idaho at 593, 130 P.3d at 1131. In addition, the insurance company is required to request additional information within a reasonable time. Whether it did so with respect to the motorcycle title is a question of fact. If it did not request the information within a reasonable time, then the proof of loss was submitted on December 7, 2009, when the Hollands made a claim under the motorcycle insurance policy based upon their previous submission of documents with respect to Ben's policy.[5]

The district court held that the Hollands had failed to submit adequate proofs of loss because they did not explain to MetLife the legal theory upon which there would be coverage under the motorcycle policy. In its initial decision, the court held that the Hollands had failed to show they had submitted a proof of loss that complied with *Greenough* and *Brinkman*. The court explained: "Keep in mind that it was MetLife and its directive to its [outside counsel] to be creative in trying to find *additional* coverage for the Hollands. The only theories for additional coverage expounded by the Hollands' counsel Mihara were determined by MetLife to be without merit." On rehearing, the court affirmed its decision, explaining further:

> It is unfathomable, given the Court's prior decision, that Hollands cannot grasp that this is not a "lack of information case", this is not a "proof of loss" case, this is a coverage case. And it is not facts or information or funeral bills that create any lack of information, it is Hollands' attorney Mihara not coming up with the theory of coverage under the policies, the interpretation of the policies that would lead to greater recovery for his client…it [sic] was [outside counsel] who did this at the insistence of Metlife, or at least it was Metlife that came up with these theories.

In *Brinkman*, we held as follows:

> The amount of information provided should be proportional to the amount reasonably available to the insured. If the information provided is insufficient to give the insurer an opportunity to investigate and determine its liability, the insurer may deny coverage. Otherwise, the insurer must investigate and/or

---

[5] Because there was no recovery on the automobile policy of the Hollands, the district court need not determine when the proof of loss was complete as to that policy.

determine its rights and liabilities. The documentation is the "proof." The explanation of physical and/or financial injury is the "loss." "Loss" must be distinguished from liability. The insurer will determine its liability with the knowledge that it must be fair and accurate or suffer the consequences.

115 Idaho at 350, 766 P.2d at 1231.

As we said in *Brinkman*, " '*Loss' must be distinguished from liability*. The insurer will determine its liability with the knowledge that it must be fair and accurate or suffer the consequences." *Id.* (emphasis added). The insured must provide a proof of loss to the insurance company, not a theory of coverage under the terms of the policy. During oral argument, MetLife conceded that "liability" in this quotation meant "coverage," which it clearly does. The insurance company only has liability under the policy for the loss if there is coverage. To submit a proof of loss that complies with Idaho Code section 41-1839, the insured does not have to provide the insurance company with theories of liability under the terms of the policy. It is the insurance company that drafted its insurance policy and it is held to know the terms of its own policy and the coverage provided.

       **b.    Expiration of thirty days.** The district court quoted the statement in *Greenough* that a "proof of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." 142 Idaho at 593, 130 P.3d at 1131. It then interpreted "reasonable opportunity" to refer to the length of time for the insurer to investigate the issue of coverage and held that "Metlife was not provided with 'a reasonable opportunity to investigate and determine its liability', given the January 22, 2010, deadline that Mihara agreed to and beyond which he was unwilling to extend." In so holding, the court erred. The words "reasonable opportunity" in the quotation from *Greenough* clearly refer to the amount of information provided in the proof of loss, not the amount of time it takes the insurance company to determine if there is coverage. The statute sets forth the amount of time within which to investigate and determine coverage in order to avoid liability for an award of attorney fees if a lawsuit is later filed to recover under the insurance policy.

Idaho Code section 41-1839(1) provides that the insured is entitled to an award of attorney fees if the insurer fails to pay the amount justly due "for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract." That

thirty-day limit is for the benefit of the insured. "The purpose of the statute is to provide an incentive for insurers to settle just claims in order to reduce the amount of litigation and the high costs associated with litigation," *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 247, 61 P.3d 601, 604 (2002), and "to prevent the sum that is due the insured under the policy from being diminished by expenditures for services of an attorney," *Walton v. Hartford Ins. Co.*, 120 Idaho 616, 620, 818 P.2d 320, 324 (1991). Because the thirty-day limit is for the insured's benefit, the insured can agree to extend the time when the 30-day period begins to run or when it is deemed to expire.

In his affidavit in support of the motion for attorney fees, Mr. Mihara stated: "Plaintiffs gave their insurer extensions past the thirty (30) days allowed for a decision. After three extensions, Plaintiffs decided that they were entitled to a decision." The insurance adjuster stated in her affidavit that when Mr. Mihara advised her on December 7, 2009, that the Hollands were making claims under their two policies, she told him she was leaving on a three-week vacation and would not be back in her office until January 6, 2010. According to the adjuster, she told him: "As a result, I would not be able to review the two new claims until after I returned. I asked him if the delay would be acceptable and he assured me it would."

The parties disagree as to the meaning of this agreement. MetLife contends that the Hollands extended the time on which the thirty-day period would begin to run until January 6, 2010, when the adjuster would be back in the office and be able to review whether there was coverage under the policies. The Hollands contend that they were merely agreeing to delay the filing of a lawsuit, although the earliest date on which they could have filed a lawsuit and been entitled to an award of attorney fees under Idaho Code section 41-1839 would have been on January 7, 2010, which would be the thirty-first day after the proof of loss had been submitted on these two policies. If MetLife's contention is correct, then the Hollands would not be entitled to recover attorney fees in connection with their claim under the motorcycle policy because the lawsuit was filed less than thirty days after January 6, 2010. This is a factual dispute that the district court must resolve. If the court finds that the agreement was to extend the time on which the thirty-day period would begin to run, it must also decide whether such agreement applied to the claims under all three policies, or only to the two policies issued to Mr. and Mrs. Holland.

**c. Filing a lawsuit.** The Hollands filed this lawsuit on January 26, 2010. "The proof of loss under the statute must be furnished thirty days *prior* to bringing the action."

17

*Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 671, 735 P.2d 974, 982 (1987) (emphasis added). If the parties agreed that the thirty-day period did not begin to run until January 6, 2010, then the Hollands would have filed the lawsuit before the expiration of the thirty-day period and they would not be entitled to recover attorney fees under Idaho Code section 41-1839.

      **d. Payment of amount justly due.** Idaho Code section 41-1839(1) states that an insurer is liable for attorney fees if, within the thirty-day period, it fails "to pay to the person entitled thereto the amount justly due under such policy." Section 41-1839(2) provides:

> In any such action or arbitration, if it is alleged that before the commencement thereof, a tender of the full amount justly due was made to the person entitled thereto, and such amount is thereupon deposited in the court, and if the allegation is found to be true, or if it is determined in such action or arbitration that no amount is justly due, then no such attorney's fees may be recovered.

In order to avoid liability for attorney fees, the insurance company must either: (a) *pay* the amount justly due to the person entitled within the thirty-day period, or (b) tender the amount justly due to the person entitled thereto *and* thereupon deposit such amount in the court prior to the commencement of the lawsuit. Offering the amount justly due does not constitute either paying it to the person entitled thereto or depositing it in the court. Likewise, sending the person entitled thereto a warrant or check with instructions not to negotiate it does not constitute payment until there is permission to negotiate it.

The amount justly due can be determined by trial, *Boel v. Stewart Title Guaranty Co.*, 137 Idaho 9, 16, 43 P.3d 768, 775 (2002); by arbitration, *Martin*, 138 Idaho at 248, 61 P.3d at 605; or by settlement, *Parsons v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 745, 152 P.3d 614, 616 (2007). In this case, the settlement determined that the total amount justly due under Ben's policy and the motorcycle policy was $200,000.

## VI.

### Are the Hollands Entitled to an Award of Attorney Fees on Appeal?

The Hollands seek an award of attorney fees on appeal pursuant to Idaho Code section 41-1839. Whether or not they are entitled to attorney fees under that statute has yet to be determined. If the district court determines that the Hollands are entitled to an award of attorney

fees under Idaho Code section 41-1839, then it can also award them attorney fees for this appeal. The amount of any attorney fees awarded is left to the discretion of the court. *Id*. at 747, 152 P.3d at 618.

## VII.
### Conclusion.

We vacate the judgment and order denying appellants an award of attorney fees under Idaho Code section 41-1839, and we remand this case for further proceedings that are consistent with this opinion. We award appellants costs, but not attorney fees, on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**