43 P.3d 768

**Neil F. BOEL and Karen S. Boel, husband and wife, Plaintiffs–Respondents–Cross Appellants,**

v.

**STEWART TITLE GUARANTY COMPANY, a Texas corporation, Defendant–Appellant–Cross Respondent.**

No. 26267.

Supreme Court of Idaho,
Boise, November 2001 Term.

Feb. 28, 2002.

Spink, Butler, Clapp, LLP, Boise, for appellant. Michael T. Spink argued.

Davison, Copple, Copple & Copple, Boise, for respondents. Heather Anne Cunningham argued.

KIDWELL, Justice

This case involves the interpretation of a title insurance policy issued by Stewart Title Company of Idaho (Stewart Title) to Neil and Karen Boel (the Boels). After learning that the federal government had an adverse claim of title to a portion of the land on which their house is situated, the Boels made a claim with Stewart Title under their policy. When Stewart Title did not pay the amount requested by the Boels as damages, the Boels filed this lawsuit. A jury found that the defect in the title to the Boel property was covered under the Boels' policy and awarded $70,000.00 in damages. Stewart Title appealed, arguing that the title defect was excepted from coverage under the policy provisions, that the Boels failed to provide an adequate proof of loss as required by the policy, that the district court erred in admitting the valuation testimony of several real estate agents or brokers, and that the district court erred in awarding attorney fees and costs to the Boels. The Boels cross-appealed, arguing that they were entitled to a larger award of costs and that the district court erred in declining to award pre-judgment interest. We affirm the decision of the district court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In 1993 the Boels purchased a lot with a home in the Maple Ridge Estates subdivision in Ada County, Idaho (the Boel property). At that time, the Boels were aware of the existence of an underground ditch that crosses their property. The record indicates that the ditch enters the Boel property as an open ditch and then proceeds underground through a pipe or tile across the Boel property, the street leading to the Boel property, and other streets and lots in the subdivision. When the Boels purchased the property they received a title insurance policy from Stewart Title.

In 1997, the United States Bureau of Reclamation performed a survey in Maple Ridge Estates subdivision. On August 7, 1997, the Bureau sent a letter to the Boels and some of their neighbors, informing them that in 1910, the United States was the grantee of fee simple title to a thirty-foot strip of land through the Boel property and other parts of the subdivision (the fee strip) by a recorded deed. The letter further advised that the developer of the subdivision had relocated the ditch to its present location, which is not entirely within the fee strip. The parties do not currently dispute the existence of the recorded deed in favor of the United States; however, Stewart Title did not discover the existence of the deed prior to issuing the policy of title insurance to the Boels.

Immediately upon receiving the letter, the Boels contacted Stewart Title's successor, Alliance Title—hereafter referred to as Stewart Title, for convenience—regarding the letter's claims that the Boels did not own their entire lot. Over the next several months, the Boels exchanged telephone messages and conversations with various Stewart Title representa-

tives, some of whom were located out of state. Throughout the process, the Boels were told that Stewart Title had initiated an investigation process and would be consulting appraisers and the company's local title agents. On January 20, 1998, Stewart Title informed the Boels that the appraiser it had hired could not quantify any damages resulting from the fee strip. In response, the Boels faxed a letter to Stewart Title that same day, outlining their claim. The Boels referenced the letter sent by the Bureau of Reclamation, noted that the Bureau's claims were backed by a recorded deed, indicated that they would never have purchased the property if they had known about the fee strip, indicated that the property constituted the perfectly unique property they desired absent the fee strip, claimed that any future sale of the property was in serious jeopardy, and demanded payment of the remainder of the mortgage on the property. Stewart Title responded by faxing a letter to the Boels on February 2, 1998. The letter indicated that the claim was excepted from coverage under the policy and that the appraisal had found no diminution in value. The letter offered $2500.00 to settle the issue in return for a signed release. The Boels then filed this lawsuit against Stewart Title, seeking recovery for the damages asserted in the claim they made with Stewart Title, as well as damages due to a lack of legal right of access to their property because of the strip's continuation across the streets leading to the property.

Finding the policy language ambiguous, the district court submitted the case to a jury for a determination of whether the policy provided coverage. On January 13, 2000, the district court entered judgment on the jury's special verdict, which found that the Boels' claim was covered under the title insurance policy and that the Boels had suffered $70,000.00 in damages. On March 15, 2000, the district court awarded the Boels $89,455.90 in attorney fees, $3,317.66 in costs as a matter of right, and $7,167.32 in discretionary costs, but denied the Boels' motion for an award of pre-judgment interest.

Stewart Title has appealed, arguing that, as a matter of law, the policy language clearly and unambiguously excepts coverage for the existence of the fee strip, that the Boels failed to file a proof of loss with Stewart Title and therefore cannot recover under the policy, that the district court erred in allowing the valuation testimony of three real estate agents or brokers, and that the district court erred in awarding costs and attorney fees to the Boels. The Boels have cross-appealed, arguing that the district court erred in denying their motion for pre-judgment interest and that they were entitled to a larger award of costs as a matter of right. The Boels also seek attorney fees on appeal.

## II.

### STANDARD OF REVIEW

Issues of fact are questions for the jury, and the jury's verdict on such matters will not, in most instances, be disturbed on appeal. *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.*, 112 Idaho 722, 726, 735 P.2d 1033, 1037 (1987). "[W]hen reviewing a jury verdict on appeal the evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial." *Id.* However, when it appears to the reviewing court that the verdict is either not supported by substantial and competent evidence or is against the clear weight of the evidence—or, in other words, if upon its review of the evidence in the record the reviewing court determines that reasonable minds could not differ on issues of fact—then those issues become questions of law upon which the court may freely rule. *Id.*

When the issue is one of law, this Court has free review. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999).

## III.

### ANALYSIS

A. The Boels' Claim Was Covered Under The Title Insurance Policy Issued By Stewart Title.

The title insurance policy issued to the Boels by Stewart Title provides, in relevant part:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY ... insures ... against loss or damage ... sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated herein;

. . . .

4. Lack of a right of access to and from the land.

Schedule A, paragraph 2, provides:

The estate or interest in the land described herein and which is covered by this Policy is:

FEE SIMPLE

Schedule A goes on to provide that fee simple title is vested in Neil and Karen Boel and that the land referred to is Lot 15, Block 1, the entire lot. "Schedule B—Part 1" then provides:

THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE BY REASON OF THE FOLLOWING:

. . . .

11. Any question which may arise or claim of loss which may result from the existence of an underground ditch, which does no[t] appear to affect improvements situated upon the land:

Disclosed by: ON SITE INSPECTION

Dated: APRIL 12, 1993

 Title insurance policies are contracts between insureds and insurers. As such, absent ambiguity, they are normally governed by the same rules as applied to contracts generally. *Anderson v. Title Ins. Co.*, 103 Idaho 875, 878, 655 P.2d 82, 85 (1982).

The objective in interpreting contracts is to ascertain and give effect to the intent of the parties. The intent of the parties should, if possible, be ascertained from the language of the documents. The determination of a contract's meaning and legal effect is a question of law when the contract is clear and unambiguous.

*Twin Lakes Village Prop. Ass'n, Inc. v. Crowley*, 124 Idaho 132, 135, 857 P.2d 611, 614 (1993) (citations omitted). The question of whether a contract is ambiguous is itself a question of law. *Terteling v. Payne*, 131 Idaho 389, 391–92, 957 P.2d 1387, 1389–90 (1998).

Finding Exception 11 to be ambiguous, the district court left the question of its interpretation to the jury, with the instruction that the ambiguous language was to be strictly construed against Stewart Title. Exception 11 attempts, in broad-sweeping language, to except coverage for any class of problems that may arise from the existence of the ditch. The language—"[a]ny question which may arise or claim of loss which may result from the existence of an underground ditch"—is arguably ambiguous as it relates to the ditch itself. However, the Boels' claim does not arise from the existence of the ditch, but the existence of the deed to the fee strip that Stewart Title missed when searching the recordings. The United States, as the fee holder of the strip, could have utilized the fee strip for any purpose for which any other landholder might have used it. The fact that the federal government coincidentally utilized its fee strip for the construction and maintenance of the ditch does not mean that the Boels' damages, related to the existence of the deed, in any way "arise" or "result" from the existence of the ditch.

Consequently, we hold that the language of Exception 11 clearly does not except coverage for the existence of the fee strip and the related deed recording. Although the jury's verdict was based upon instructions regarding ambiguity, the jury reached the proper result, and we therefore affirm the verdict and judgment.

**B. The Boels Submitted An Adequate Proof Of Loss To Stewart Title In Accordance With The Policy Language.**

 Stewart Title argues that the January 20, 1998, letter sent by the Boels was not a proof of loss under the policy, because it failed to provide the basis for calculating the

amount of the claimed damages. Stewart Title argues that it was therefore relieved of its obligations to the Boels under the policy as a matter of law and that the question of liability should not have been submitted to the jury. The relevant policy language reads as follows:

PROOF OF LOSS OR DAMAGE.

[A] proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company [Stewart Title].... The proof of loss or damage shall describe the defect ... which constitutes the basis of loss or damage and shall state, *to the extent possible,* the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate....

(Emphasis added). In this case, it is undisputed that the Boels first reported their claim under the policy in August of 1997. Stewart Title then investigated the claim and hired an appraiser to assess the potential loss. After several communications with Stewart Title, the Boels sent the letter of January 20, which outlined their claim in terms of the loss of intrinsic value of the land to them personally and their belief that their future ability to sell the land might be nonexistent. Shortly thereafter, Stewart Title responded with a letter indicating its belief that the Boels did not have any covered damages, and offered $2500.00 to settle the issue.

■ This Court has analyzed proof of loss requirements as follows:

The amount of information provided should be proportional to the amount reasonably available to the insured. If the information provided is insufficient to give the insurer an opportunity to investigate and determine its liability, the insurer may deny coverage. Otherwise, the insurer must investigate and/or determine its rights and liabilities. The documentation is the "proof." The explanation of physical and/or financial injury is the "loss." "Loss" must be distinguished from liability. The insurer will determine its liability

with the knowledge that it must be fair and accurate or suffer the consequences. *Brinkman v. Aid Ins. Co.,* 115 Idaho 346, 350, 766 P.2d 1227, 1231 (1988). Consequently, the proof of loss need not prove with mathematical certainty the amount of damages sustained by the insured, and it need not conclusively prove the insurer's liability for the claimed loss.

In their letter of January 20, 1998, the Boels plainly provided Stewart Title with the basis for their claimed loss—the existence of the deed in favor of the federal government. Additionally, the letter provided, *to the extent possible,* the basis for calculating the amount of the claimed loss or damage—the Boels indicated a belief that the intrinsic value of the property to them, as well as their ability to sell the property, had been almost completely destroyed. The Boels' demand for payment of their remaining mortgage, whether or not it reflected the exact dollar amount of their damages, was an attempt to fix the amount of damages in a way that related to their perception that the utility and marketability of the land had been largely destroyed. This information was sufficient to give Stewart Title "an opportunity to investigate and determine its liability" relative to the Boels' claimed damages. *Brinkman,* 115 Idaho at 350, 766 P.2d at 1231. Consequently, the Boels' letter provided the basis for calculating the amount of the claimed damages, and it was an adequate proof of loss under the policy.

## C. The District Court Did Not Err In Admitting The Testimony Of Real Estate Agents.

■ Stewart Title argues that the district court erred in allowing three real estate agents or brokers, who were not licensed real estate appraisers, to testify as to the value of the Boels' property. Under Idaho Rule of Evidence 702,

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the *form of an opinion or otherwise.*

The real estate agents who testified were qualified to testify to things outside the common knowledge of the jury by virtue of their specialized knowledge and experience. However, Stewart Title argues that the Idaho Real Estate Appraisers Act (the Act), I.C. §§ 54–4101–4119, prohibits persons not licensed as real estate appraisers from giving an opinion as to the value of property.

The Act was amended in 1999 in order to, among other things, make it unlawful for a person to perform an appraisal in this state if that person is not licensed or certified by the Real Estate Appraiser Board. I.C. § 54–4103. "Appraisal" is defined to include giving an opinion as to the value of an identified piece of real estate. I.C. § 54–4104. The Act does include narrow exceptions to its prohibitions, related to the conduct of real estate brokers or salespeople in the course of providing their services, which are not relevant to this case. *See* I.C. § 54–4105.

Prior to the 1999 amendments, this Court approved of the practice of allowing real estate agents or brokers to testify as to valuation. *See, e.g., Lunders v. Estate of Snyder,* 131 Idaho 689, 698, 963 P.2d 372, 381 (1998); *State v. Blair,* 91 Idaho 137, 138, 417 P.2d 217, 218 (1966); *Valdez v. Christensen,* 89 Idaho 285, 292, 404 P.2d 343, 347 (1965). While the legislature amended the Act in 1999 to provide a general prohibition against giving an opinion as to value, it did not specifically address the court-approved practice of allowing expert testimony in litigation. In fact, nowhere does the Act mention the giving of expert testimony in litigation. Additionally, the legislative intent in adopting the Act was "to safeguard life, health and property and to promote the public welfare." I.C. § 54–4102. As noted by the district court, this statement of intent makes it apparent that the legislature did not intend the Act to apply to expert testimony in litigation, where the evidentiary rules and the court serve to protect the process from whatever perceived harm the statute was designed to curb. Consequently, we hold that the legislature did not intend to alter or contradict the provisions of I.R.E. 702 in enacting the Idaho Real Estate Appraisers Act. A real estate agent, if properly qualified under I.R.E. 702, may testify as to the value of property in the course of litigation. The district court's decision to allow the real estate agents to testify is affirmed.

### D. The Boels Were Entitled To An Award Of Attorney Fees At Trial Pursuant To I.C. § 41–1839.

Stewart Title argues that the district court erred in awarding attorney fees to the Boels, because the requirements of I.C. § 41–1839 were not satisfied. The relevant language of I.C. § 41–1839 provides:

> Any insurer issuing any policy ... of insurance ... of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy ... to pay to the person entitled thereto the amount justly due under such policy ... shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy ... pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

I.C. § 41–1839(1). This Court has held that this provision applies only when (1) the insured has provided proof of a covered loss; (2) the insurer has failed to pay an amount justly due under the policy within thirty days of the proof of loss; and (3) the insured is thereafter compelled to bring suit to recover for the loss. *Wensman v. Farmers Ins. Co. of Idaho,* 134 Idaho 148, 153, 997 P.2d 609, 614 (2000).

There is no dispute regarding the district court's finding that the Boels were the prevailing party. As discussed above, the Boels' letter amounted to a proof of loss under the policy. Stewart Title received the Boels' letter on January 20, 1998. As of March 2, 1998, when the Boels filed their complaint in this action, Stewart Title had failed to tender the amount justly due, which is "the amount ultimately determined by the jury." *Brinkman,* 115 Idaho at 350, 766 P.2d at 1231. Consequently, Stewart Title failed, for more than thirty days after receiving the Boels' proof of loss, to pay to the Boels the amount the jury determined to be justly due.

Additionally, the Boels were compelled to bring suit to recover for the loss. On January 20, 1998, after months of communications, delays, and "investigation," Stewart Title indicated that its appraiser could not quantify what, if any, damages the Boels had suffered. Being concerned about their claim, the Boels immediately responded with a proof of loss outlining their claim. Then, on February 2, 1998, Stewart Title indicated to the Boels that they did not have a covered loss and that there were no damages, but that the issue could be settled for $2500.00. While Stewart Title may not have issued a formal denial of the Boels' claim, these communications from Stewart Title, combined with the previous months of delay, were sufficient to make it clear to the Boels that Stewart Title was not going to pay their claimed damages. In the face of this effective denial of coverage by Stewart Title, the Boels were compelled to bring suit in order to recover the $70,000.00 that the jury found to be justly due. Consequently, the requirements of I.C. § 41–1839(1) were met, and the district court did not err in awarding attorney fees to the Boels.

■■■ Stewart Title also argues that the amount of the award of attorney fees is unreasonable. Parties appealing a trial court's award of attorney fees bear the burden of demonstrating a clear abuse of the trial court's discretion. *Brinkman*, 115 Idaho at 350, 766 P.2d at 1231. In exercising its discretion, the trial court must consider the twelve factors outlined in I.R.C.P. 54(e)(3). *Id.* at 351, 766 P.2d at 1232. A trial court need not specifically address all of the factors contained in I.R.C.P. 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all. *Id.* In its March 15, 2000, Memorandum Decision and Order, the district court specifically addressed its consideration of nine of those factors in writing. The court also indicated that it had considered the other three factors and found their impact to be negligible. The court clearly reviewed the fee application in some detail, deleting some duplicate entries from the Boels' counsel.

■■■ Notably, the amount of attorney fees awarded was greater than the amount recovered by the Boels. While a trial court must consider the amount involved in the case and the results obtained, the court is not required to give that factor more weight or emphasis than should be given to the other applicable factors. *Lunders*, 131 Idaho at 700, 963 P.2d at 383. The amount of attorney fees need not be proportional to the amount of damages awarded. *Id.*

Stewart Title has not demonstrated an abuse of discretion in the district court's decision to award attorney fees or in its determination of the reasonable amount to award. Consequently, the district court's award of attorney fees is affirmed.

## E. The District Court's Award Of Costs Is Affirmed.

As to the district court's award of costs as a matter of right, under I.R.C.P. 54(d)(1)(C), Stewart Title simply argues that they should not have been awarded due to the Boels' failure to submit a proof of loss. Because we hold that the Boels did submit an adequate proof of loss, this argument fails, and the district court's award of costs as a matter of right is affirmed.

■■■ An award of discretionary costs is controlled by I.R.C.P. 54(d)(1)(D), which provides, in part:

Discretionary Costs. Additional items of cost not enumerated in, or in an amount in excess of that listed in subparagraph (C), may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party.

The grant or denial of discretionary costs is committed to the sound discretion of the trial court and will only be reviewed by an appellate court for an abuse of that discretion. *Fish v. Smith*, 131 Idaho 492, 493, 960 P.2d 175, 176 (1998). The district court made specific findings regarding each group of items submitted by the Boels for discretionary costs. The court carefully reviewed the items, accepting some, and rejecting others as being cumulative, unnecessary, unexceptional, or the result of duplicate billings.

Stewart Title has failed to show that the district court abused its discretion in awarding discretionary costs, and the award is affirmed.

### ISSUES ON CROSS–APPEAL

**F. The Boels Were Not Entitled To Pre–Judgment Interest On The Jury's Award.**

After trial, the Boels sought an award of pre-judgment interest on the jury's award, pursuant to I.C. § 28–22–104, from the date of receipt of the Bureau of Reclamation's letter. The district court declined to award any pre-judgment interest.

Idaho Code section 28–22–104 provides, in part:

> (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
>
> 1. Money due by express contract.

I.C. § 28–22–104(1). "It is settled law in Idaho that pre-judgment interest is available only when damages are liquidated or are ascertainable by mere mathematical process." *Bouten Const. Co.*, 133 Idaho at 762, 992 P.2d at 757. The title insurance policy did not specify a liquidated amount or a mechanism for mathematically determining the amount of damages the Boels would suffer as the result of any particular title defect. Contrary to Stewart Title's argument, the Boels clearly suffered some amount of damages prior to the time they brought suit; however, the actual amount of damage was not ascertainable until the jury returned its verdict. Consequently, the district court's decision to deny the Boels' claim for pre-judgment interest is affirmed.

**G. The Boels Were Not Entitled To A Larger Award Of Costs As A Matter Of Right.**

The Boels also cross-appeal the district court's decision to offset a total of $864.50 from the $500.00 it allowed as costs for each of the Boels' expert witnesses. The offset amount represented the amount that Stewart Title had already paid to the Boels for the time the Boels' experts had spent responding to Stewart Title's discovery. Stewart Title paid that amount in response to an order of the district court pursuant to I.R.C.P. 26(b)(4)(C). The Boels essentially urge that the deduction was unfair, arguing that, in reality, the current costs of the services of an expert are more than $500.00. However, I.R.C.P. 54(d)(1)(C)(8) clearly provides that a party shall not receive an award of costs as a matter of right in excess of $500.00 per expert. In offsetting the $864.50, the district court merely gave Stewart Title a credit for the amount it had previously paid toward the Boels' costs for expert services. The district court did not err in offsetting $864.50 from the Boels' award of costs as a matter of right.

### IV.

### ATTORNEY FEES ON APPEAL

The Boels seek an award of attorney fees on appeal pursuant to I.C. § 41–1839. For the same reasons they were entitled to an award of attorney fees at trial pursuant to I.C. § 41–1839, the Boels are entitled to an award of attorney fees on appeal.

### V.

### CONCLUSION

The Boels' claim was covered under the title insurance policy issued by Stewart Title, and the Boels provided Stewart Title with an adequate proof of loss. The district court did not err in admitting the valuation testimony offered by several real estate agents or brokers. The district court did not err in awarding attorney fees and costs or in fixing the amounts of those awards. The Boels were not entitled to an award of prejudgment interest. Consequently, the decision of the district court is affirmed. Attorney fees and costs on appeal are awarded to the Boels.

Justices SCHROEDER and EISMANN and Justices Pro Tem MEEHL and HURLBUTT concur.